444 So.2d 1180 (1983)
Alan V. ANDRIES
v.
GENERAL MOTORS CORPORATION, DELCO BATTERIES DIVISION, et al.
No. 82-C-1953.
Supreme Court of Louisiana.
November 28, 1983.
Rehearing Denied January 27, 1984.
Edward P. Sutherland, Baton Rouge, for applicant.
*1181 Peter L. Bernard, Jr., Joseph S. Palermo, Jr., Bernard, Cassisa, Babst & Saporito, Metairie, for respondents.
LEMMON, Justice.
This is an action for damages against the manufacturer of an automobile battery.[1] Plaintiff's injuries occurred when the battery exploded in his face as he used a cigarette lighter to explore under the hood in an attempt to help a stranded motorist start her car. The issue is whether the manufacturer should be held liable for failing to warn adequately that introduction of a spark or flame in proximity to the battery creates the risk of explosion.
Plaintiff stopped during darkness hours to assist a female motorist whose automobile was stopped in the middle of a fourlane roadway in a residential neighborhood. When the motorist explained that her lights and power had gone off without warning, plaintiff suspected battery trouble and raised the hood. Determining that the battery was located in the front corner on the passenger side, he stood in the front of the vehicle in order to examine the battery without exposing himself to traffic.
Plaintiff removed two or three filler caps from the battery, but was unable, because of insufficient illumination from the street light, to see down into the battery to determine the level of the fluid. Since there was no flashlight available, plaintiff lit a cigarette lighter and inserted it under the hood into the area of the battery. The battery exploded, causing serious injuries to plaintiff.
Plaintiff filed this action, alleging that defendants had designed and manufactured a battery which was not reasonably safe for its intended use and had failed to provide adequate warning about the dangerous propensities of the battery or to display the warning in a proper location. Answering special interrogatories, the jury found that the battery was not "unreasonably dangerous in normal use" and that the manufacturer had provided "an adequate warning of any unreasonable danger from a foreseeable use of the product". The judgment rendered in accordance with the verdict in favor of defendant was affirmed on appeal. 417 So.2d 479. We granted plaintiff's application for certiorari. 421 So.2d 245.
Plaintiff focuses in this court on the adequacy of the warning, not in terms of the sufficiency of the language of the warning, but in terms of the placement of the warning on the product.[2] Plaintiff argues that the warning must be "located on the product in such a manner that it could be clearly and readily seen, read and understood by the consumer".
The hazard involved in this case is the natural and unavoidable formation of explosive hydrogen and oxygen gases during the chemical reaction process which produces electrical current within the battery. No battery manufacturer has been able to devise a method of eliminating the hydrogen electrolysis procedure, although this manufacturer has attempted to minimize the hazard by developing a flame arrestor filler cap which permits the gases formed inside the battery to percolate slowly through tiny holes in the cap to the outside, where the escaping gas mixes very quickly into the surrounding air. Thus, when the flame arrestor filler caps are in place, any ignition of escaping gas is not likely to cause a flashback into the greater concentration of gas inside the battery.
Because the hazard cannot be completely eliminated, and because it is reasonably foreseeable that filler caps may be removed or that cracks or other leaks may develop in the battery, this manufacturer placed a warning label on the surface of the battery. The manufacturer also placed *1182 a warning of the particular danger in the owner's manual distributed with each car.
The battery in the present case was disposed of by the repairman after the explosion. The parties stipulated, however, that the battery was original equipment on the car and was a Model Y-86-P Delco battery. At trial, the manufacturer introduced into evidence an identical battery with an identical warning label. The warning was in red, white and black lettering, with a red and white danger symbol, on the solid black battery case. Below is a photograph of the exhibit, as it would have been viewed from the front of the car:

The owner of the car (coincidentally a battery salesman) verified that the battery introduced into evidence was the same model as his battery, and he and his wife both testified that their battery contained a warning label, although they could not remember the exact location. An engineer employed by defendant testified that the warning labels were placed on every battery and were designed to catch attention with colors contrasting with the black battery case and the raised black letters of the Delco logo. He pointed out the practical problems in achieving maximum visibility at night, noting that a light inside the hood would not function without a working battery and that a flourescent label requires an outside source of light for reflection.
Counsel for plaintiff contends that the warning label was positioned so that it was not visible to a person standing in front of the car, whose view was obstructed by the support structure of the engine compartment. Plaintiff testified that he did not see the warning, but saw only the filler caps and the Delco logo. He further asserted that he would not have placed the flame near the battery if he had seen the warning. Counsel accordingly argues that the *1183 accident would not have happened if defendant had displayed the warning as clearly and prominently as the Delco logo.
Proper placement of a warning label so that it is clearly visible is one factor to be considered in determining the adequacy of the warning in a products liability case. A warning label which is not clearly visible is not an adequate warning.
The jury in the present case had the opportunity to observe the battery during the trial and to see the warning, which was located approximately one inch from the filler caps removed by plaintiff.[3] At the completion of the evidence, the court permitted a demonstration in which the battery that had been introduced into evidence was placed in the vehicle that had been involved in the accident. After inspecting the battery in place, and after listening to the arguments by counsel and instructions by the court, the jury affirmatively answered Interrogatory No. 3, which asked "Did General Motors give an adequate warning of any unreasonable danger from a foreseeable use of the product?" This answer implicitly includes a finding by the jury that the warning was clearly visible. After reviewing the record, we conclude that the evidence supports the jury's finding.
Plaintiff contends, however, that the jury's finding should be disregarded because of the jury's exposure to improper instructions and confusing interrogatories. At trial, counsel for plaintiff, citing Chappuis v. Sears Roebuck & Co., 358 So.2d 926 (La.1978), requested the following special instruction:
"It is an established principle in the law of products liability that a manufacturer has a duty to give adequate warning of unreasonable danger involved in the normal use of its product, where the manufacturer knows or should know of such danger.
"The seller (manufacturer) is bound to explain himself clearly respecting the extent of his obligations and any obscure or ambiguous clause is construed against him." (Emphasis in original text)
The trial court refused the requested special instruction, having already included the following in the court's instructions, a copy of which was provided to counsel prior to trial:
"A manufacturer of a product must give an adequate warning of any danger inherent in any product made by him or in its use which he knows or should know, and which the user of the product would not ordinarily discover. The warning should be such that if followed, it would make the product safe for users. To comply with this duty, the manufacturer must appropriately label the product, giving due consideration to the likelihood of accident and the seriousness of the consequences from failure to label it to warn of any dangers that are inherent in it and its use or that may arise from improper handling or use of the product. However, the duty of a manufacturer to warn goes only to those dangers which are not obvious. A manufacturer is not compelled to warn knowledgeable purchasers of the dangers of which they know or should be aware."
We conclude that the trial judge's instruction on adequacy of warning was a complete and correct statement of the law, which included the substance of the requested instruction. Contrary to plaintiff's assertion, the court's instruction did not tend to mislead the jury into believing that the mere presence of a warning label fulfilled the manufacturer's duty. The instruction that "the manufacturer must appropriately label the product" is actually more pertinent to plaintiff's contentions in this case than the requested language, which was taken verbatim from the Chappuis decision. In the Chappuis case, the problem was the failure of the manufacturer's warning label to include the particular hazard, known to the manufacturer, which caused Chappuis' injury.[4] Here, the language *1184 of the warning label was completely adequate to warn against inserting open flames in close proximity to the battery.
Plaintiff finally contends that the trial court erred in revising, over plaintiff's objection, Jury Interrogatory No. 3, quoted above, which the jury answered 9 to 3 in favor of defendant. Plaintiff complains that the descriptive term "clear and adequate", which was in the originally proposed interrogatory, was necessary to eliminate any confusion over whether the manufacturer's duty was discharged by merely placing a warning label on the product.
As in the case of the requested instruction, we perceive no such confusion. Indeed, the judge's instructions clearly pointed out that the duty includes a warning which, if followed, would make the product safe and that the product must be appropriately labeled. Under the court's instruction, plaintiff argued logically to the jury that a warning label which is not visible because of poor positioning is not an adequate warning and that the product was therefore not appropriately labeled. Because plaintiff testified that he did not see the label, the jury could have accepted his version. However, the jury, after viewing the battery in place at the completion of the evidence, rejected this argument, and this determination, as noted above, was supported by the evidence.
Accordingly, the judgment is affirmed.
DIXON, C.J., dissents with reasons.
CALOGERO, J., dissents.
DIXON, Chief Justice (dissenting).
I respectfully dissent.
The manufacturer made an economic choice to equip its automobile with a highly explosive and extremely dangerous battery. The danger was known to the manufacturer. People generally have never understood the danger of exploding batteries, unlike the danger of exploding gas tanks. In its newer models, the manufacturer has eliminated the dangerous; battery. The calculated risk of injuring other people should not protect the manufacturer from the terribly serious consequences of an explosion.
NOTES
[1] General Motors Corporation manufactured both the battery and the automobile in which the battery was installed as original equipment.
[2] The language on the warning label was very similar to that approved as an adequate warning in Hudgens v. Interstate Battery Systems of America, Inc., 393 So.2d 940 (La.App.3rd Cir. 1981).
[3] Indeed, plaintiff had to reach over the warning in order to remove the caps.
[4] In Chappuis, plaintiff was struck in the eye by a chip from a hammer which had already been chipped once before. The manufacturer, who was aware that a chipped hammer is likely to chip again, did not include this danger in the text of the warning label placed on the hammer.